

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XXXXIIXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Hames E. Kilday
Director Motor Transportation Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-1430
Re: Irregular motor bus operations

We quote your letter of March 12, 1940, requesting an opinion of this Department, in full:

"We wish your opinion on the following sets of facts:

### "FIRST: CHARTER TRIPS

"At times, schools or organizations or societies or groups of different kinds decide to make a trip for sight-seeing or educational purposes, or some such purpose.

"(a) Assuming that a number of persons within such a group contemplating such a trip, go to a regularly certificated bus line and procure the use of a bus for this trip - the driver being the bus line's driver and the transportation charges being paid by the several passengers who are members of the organization, to the bus line on a per head basis - Does this bus line which pays all expense of operation, have authority to engage in the enterprise - assuming that in making the trip, the bus disregards its certificate and goes over routes and roads not covered by said bus line's Certificates?

"The operation is irregular - that is, it may never occur but one time and then, again, it may occur again at some unforeseeable and indefinite date.

"(b) Does the bus line have authority to engage in the enterprise above described

"(1) Where the bus and driver are hired at so much per day or so much per mile or so much for the entire trip?

"(2) Where the organization, as distinguished from the members thereof, pay the bus line on a per head basis, per mile basis or a per trip basis, all expenses of operation in each instance being paid by the bus line?

"Some of these trips come from without the State and some of them are entirely intrastate.

"Does the Railroad Commission have any duty, under the Motor Bus Laws, in connection with either the inter or intra state movements described above?

"SECOND:  PARTY TRIPS

"Assuming that no society, organization or group of any kind is involved, but some individual interests his friends in such a trip, then with respect to this latter set-up, we ask your opinion with regard to the same questions above enumerated."

By letter of May 29, 1940, you furnished us with the following additional information:

"With further reference to our letter of March 12, 1940, requesting an opinion regarding chartered bus trips, you are advised that, in our opinion, the larger certificated operators in Texas make several such trips each year, using the same certificated busses that are operated over the regular routes authorized by their certificates."

The operation of motor busses is governed by Article 911a, Vernon's Civil Statutes.

Sec. 1(c) thereof reads as follows:

"Sec. 1 (c) The term 'Motor Bus Company' when used in this Act (Art. 911a; P.C. 1690a) means every corporation or persons as herein defined, their lessees, trustees, receivers, or trustees appointed by any court whatsoever, owning, controlling, operating, or managing any motor propelled passenger vehicle, not usually operated on or over rails, and engaged in the business of transporting persons for compensation or hire over the public highways within the State of Texas, whether operating over fixed routes or fixed schedules or otherwise; provided further, that the term 'Motor Bus Company' as used in this Act (Art. 911a; P.C. 1690a) shall not include corporations or persons, their lessees, trustees, or receivers, or trustees appointed by any court whatsoever, insofar as they own, control, operate, or manage motor propelled passenger vehicles operated wholly within the limits of any incorporated town or city and the suburbs thereof, whether separately incorporated or otherwise.

Section 2 of said Act provides in part:

"Sec. 2. All motor-bus companies, as defined herein, are hereby declared to be 'common carriers' and subject to regulation

by the State of Texas, and shall not operate any motor pro-
pelled passenger vehicle for the regular transportation of
persons as passengers for compensation or hire over any
public highway in this State except in accordance with the
provision of this Act..."

Section 4(a) thereof reads:

"Sec. 4. (a) The Commission is hereby vested with power and
authority, and it is hereby made its duty to supervise and
regulate the public service rendered by every motor bus com-
pany operating over the highways in this State, to fix or
approve the maximum, or minimum, or maximum and minimum,
fares, rates or charges of, and to prescribe all rules and
regulations necessary for the government of, each motor bus
company; to prescribe the routes, schedules, service, and
safety of operations of each such motor bus company; to acquire
the filing of such annual or other reports and of such other
data by such motor bus company as the Commission may deem
necessary."

Section 8 of said Article 911a requires an application to set forth
certain facts including "the desires to operate" and "a proposed
time schedule." However, we do not believe that this was meant to
require motor bus carriers to operate only with fixed routes and
schedules so as to exclude the character of operations described
in your letter. In this connection attention is drawn to Sec. 1
(c), quoted above, saying that a person or corporation, etc., may
be a "motor bus company" and therefore subject to regulation
"whether operating over fixed routes or fixed schedules, or other-
wise."

We now refer to Sec. 2, providing that motor bus companies "shall
not operate any motor propelled passenger vehicle for the regular
transportation of persons as passengers for compensation or hire
over any public highway in this State except in accordance with the
provision of this Act." Citing this provision, the Court of Crimi-
nal Appeals, in Hoffman vs. State, 20 S.W. (2d) 1057, held that a
single operation by an individual did not constitute him a motor
bus carrier subject to the statute. This case was followed by the
El Paso Court of Civil Appeals in Commercial Credit Company vs.
Groseclose, 66 S.W. (2d) 709. The fact that a person who does not
make it a business, or hold himself out as being ready or willing
to transport passengers for compensation, occasionally does use
his automobile, or one which he has hired, to carry someone for com-
pensation does not necessarily bring him within the statute as a
common carrier. Such seems reasonable to us and is within the im-
plication of the two cases cited above. On the other hand we do
not believe that a person would necessarily have to establish re-
gular schedules over certain routes before coming within the Act.

We do not think the word "regular" was used in that sense in Sec.2, particularly when we remember the language used in Sec. 1 (c). From the opinion of Judge Cobb, in Woolf vs. Del Rio Motor Transport Company, 27 S.W. (2d) 874, we quote:

> "The testimony showed the defendents operated outside of the city of Del Rio and in every direction that they had a chance; as far as three miles east of the city of Del Rio, and twelve miles west of said city to Devil's River; that they operated over the public highways within this state and charged compensation for carrying passengers; that they held themselves out to take passengers anywhere......
>
> "It is clear from a reading of the amendment that it was the intention of the Legislature to make the Motor Bus Law apply to all operators who use the public highways for transporting persons for hire, and it is not necessary that the transportation be between certain points or that the person transporting persons for hire shall be engaged regularly in the business. This brought within its provisions the defendants, even though they did not operate regularly but only indiscriminately."

We note that the busses concerned are the same certificated busses that the carrier uses over the regular routes authorized by its certificate. We understand also that such vehicles are not adapted to private use but are specially constructed for use in the carrier business. In our opinion, it makes no difference that the particular type of operation which we are now considering is irregular as to routes and has no schedules. It is a part of the carrier's operations as such and subject to regulation by the Railroad Commission under any and all of the fact situations submitted in your several questions. Such being true, it follows also that a carrier holding a certificate authorizing operation upon certain routes only cannot lawfully operate such busses regularly or on such charter trips, over other and different routes without securing an enlargement of the certificate to authorize the same.

This opinion is written upon the assumption that the motor bus company retains control of the bus and its operation and is not intended to touch upon a situation where a bona fide lease is made and full control of the bus surrendered.

                              Yours very truly

APPROVED JUNE 7, 1940            ATTORNEY GENERAL OF TEXAS
GROVER SELLERS
FIRST ASSISTANT                 By
ATTORNEY GENERAL
                                    Glenn R. Lewis
                                        Assistant

GRL:kd;ml